UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL ZIMMERMAN,<br>　*Plaintiff*,<br><br>v.<br><br>NATIONAL GRID USA<br>SERVICE COMPANY, INC.,<br>　*Defendant*. | )<br>)<br>)　CA No.: 1:24-CV-11673<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

NOW COMES Plaintiff Daniel Zimmerman ("**Mr. Zimmerman**" or "**Plaintiff**"), by and through his attorneys, DarrowEverett LLP, and hereby commences this action against his former employer, Defendant National Grid Service Company, Inc. ("**Defendant**" or "**National Grid**"), and alleges as follows:

**PRELIMINARY STATEMENT**

Mr. Zimmerman brings this action against National Grid for violations of the Age Discrimination in Employment Act of 1967 ("**ADEA**") (29 U.S.C. § 621 et seq.), and M.G.L. ch. 151B for discrimination on the basis of age. Mr. Zimmerman was hired by National Grid over twenty-three (23) years ago. During his tenure at National Grid, Mr. Zimmerman was an exemplary employee who regularly received accolades for his performance, driving unmatched productivity and consistently exceeding National Grid's prescribed goals. Despite Mr. Zimmerman's dedication to his job and his exemplary service, Mr. Zimmerman was subjected to discrimination on the basis of his age (over forty (40) years old) and wrongfully terminated from his employment. Mr. Zimmerman properly filed a claim with the Massachusetts Commission Against Discrimination ("MCAD") for employment discrimination, and, on April 8, 2024, MCAD

issued a Dismissal and Notice of Rights to Mr. Zimmerman in accordance with M.G.L. ch. 151B § 9, as well as the Equal Employment Opportunity Commission's ("EEOC") Rules of Procedure, 804 CMR 1.04(12) and (13).

## PARTIES

1. Plaintiff is an individual residing at 17 Railroad Avenue, North Reading, Massachusetts 01864.

2. Defendant is a Massachusetts corporation with a corporate address of 170 Data Road, Waltham, Massachusetts 02451.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331because it is a civil action arising under the ADEA.

4. This Court's exercise of supplemental jurisdiction over Plaintiff's state claim is warranted as it is so related to Plaintiff's federal claims that it forms a part of the same case or controversy. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

5. Venue is proper in this district because Defendant's unlawful employment practices were committed in this judicial district.

### *Exhaustion of Administrative Remedies*

6. Plaintiff timely filed a charge of discrimination against Defendant with the MCAD and EEOC.

7. The Plaintiff was issued a Notice of Right to Sue on April 8, 2024. Accordingly, Plaintiff has fully complied with all prerequisites for jurisdiction in this Court.

## FACTUAL BACKGROUND

8. Plaintiff was employed by National Grid for twenty-three (23) years until his wrongful termination by National Grid in September 2022.

9. Plaintiff was an exemplary employee who regularly received accolades for his performance and drove unmatched productivity, all while consistently exceeding Defendant's prescribed goals.

10. In the ten (10) years prior to April 1, 2022, Plaintiff managed gas leak maintenance crews for Defendant, a maintenance position that involved repairing gas leaks.

***Plaintiff's New Position with National Grid***

11. On April 1, 2022, National Grid's Malden Division manager, Gwyn Matthews, informed Plaintiff regarding a change to his job effective immediately.

12. Plaintiff was abruptly informed that he would be reassigned from his supervisor maintenance position to a new supervisor role involving gas service installations. Plaintiff did not have experience performing gas service installations.

13. Plaintiff expressed to Ms. Matthews that this reassignment did not make sense given his extensive experience in his previous maintenance role and his lack of familiarity with the new installation role, especially at this late stage of his career.

14. Despite Plaintiff's concerns, Ms. Matthews insisted Plaintiff take the new installation role because Plaintiff's predecessor could not meet National Grid's goals and Ms. Matthews was seeking a supervisor who could achieve success in the position.

15. Ms. Matthews informed Plaintiff that she was confident he could deliver in the new position.

16. On that same day, Plaintiff was diagnosed with COVID-19 and missed several days of work.

17. When Plaintiff returned to work on April 6, 2023, he was was immediately thrown into his new installation role.

18. Plaintiff did not receive any training pertaining to the new installation role.

**The Woburn Job**

19. On Saturday, April 9, 2022, which was typically a scheduled overtime day, Defendant's permitting department failed to produce sufficient work packets to support the National Grid crews working that day.

20. As a result, Plaintiff searched through the list of pending jobs and located several which were ready to be assigned, including one located at 6 Duran Drive, Woburn (the "Woburn Job").

21. Plaintiff reached out to Defendant's permitting department and asked for the creation of substitute work packets with respect to the Woburn Job.

22. Duran Drive is a private way, owned by Jay Duran, Superintendent for the Woburn Department of Public Works ("Superintendent Duran").

23. The Woburn Job involved an installation at Superintendent Duran's son's home, which would require excavation work.

24. Plaintiff reached out to Superintendent Duran directly regarding the Woburn Job because Superintendent Duran usually did not allow excavation work to be performed on Duran Drive on a Saturday.

25. Superintendent Duran granted Plaintiff permission to perform the excavation work necessary for the Woburn Job on Saturday, April 9, 2022.

26. After obtaining permission to perform the excavation work, Plaintiff joined his crew on Duran Drive and they began to brainstorm how to approach the Woburn Job, as was typical prior to starting any job.

27. Plaintiff and his crew determined that there was sufficient pressure in the gas main to attach the new gas service line and run it diagonally across the cul-de-sac, which was approximately one hundred feet. The Woburn Job was completed to the homeowner's satisfaction.

28. Plaintiff did not install a gas main extension at the Woburn Job.

29. From the beginning to the end of the Woburn Job, Plaintiff was never informed by any of his crew members or Defendant's support staff that a gas main extension was required for the Woburn Job.

30. Two days later, on Monday, April 11, 2022, Plaintiff was discussing the Woburn Job with one of his colleagues.

31. When Plaintiff mentioned the diagonal method he and his crew used to deploy the gas line, his colleague responded, "you're not supposed to do that."

32. Plaintiff's colleague informed Plaintiff that all services must approach a home or business at a ninety-degree angle and that if the existing gas main is not directly in front of the property, that a gas main extension must be added at the homeowner's expense.

33. A gas main extension often costs upwards of $20,000 to the homeowner, which Plaintiff learned after the completion of the Woburn Job.

34. Plaintiff informed his colleague that he was completely unaware of this procedure.

35. Plaintiff's colleague responded to Plaintiff that it would likely not be an issue, as one of National Grid's Beverly Division employees had recently installed a service in a similar fashion (the "Beverly Division Employee").

*Plaintiff's Discriminatory Termination*

36. In early July 2022, Plaintiff was brought before Defendant's Human Resources representative.

37. Defendant's Human Resources representative informed Plaintiff that Defendant was launching an ethics violation complaint against him.

38. Defendant alleged that Plaintiff had intentionally executed the Woburn Job without a gas main extension to save the property owner, the son of Superintendent Duran, the expense of installing a gas main extension.

39. Plaintiff promptly explained to Defendant's Human Resources representative that he was not aware of National Grid's procedure regarding the installation of a gas main extension and that no one in his crew informed him of such a procedure.

40. Plaintiff further explained to Defendant's Human Resources representative that he had never received any training for his new installation position.

41. Plaintiff also told Defendant's Human Resources representative that any failure to follow procedure was driven by a lack of experience, knowledge, and training, not any desire to save a customer money.

42. In response, Defendant's Human Resource representative replied, "I find it hard to believe that a twenty-three (23) year Supervisor would not know this." The ethics case was continued to September 20, 2022.

43. On September 21, 2022, Plaintiff was informed by National Grid's Human Resources department that he was being terminated from his employment with Defendant.

44. Since Plaintiff's termination, Plaintiff has learned that the Beverly Division Employee, who is younger than Plaintiff and under the age of forty (40), and who installed service

6

in the same fashion as Plaintiff did on the Woburn Job, only received a verbal reprimand for his failure to follow National Grid procedure during said installation.

45. Plaintiff is informed and believes he was wrongfully terminated from his position at National Grid due to his age.

## COUNT I

*Discrimination in Violation of the Age Discrimination in Employment Act of 1967*
**(29 U.S.C. § 621 et seq.)**

46. Plaintiff repeats and realleges paragraphs 1 through 45 hereof, as if fully set forth herein.

47. Defendant discriminated against Plaintiff on the basis of age (over forty (40) years old) by terminating Plaintiff for allegedly failing to install a gas main extension on the Woburn Job.

48. Plaintiff completed the Woburn Job with his team to the best of his abilities and knowledge, despite having no experience with gas installation, receiving no training regarding gas installation, and having only been reassigned from a maintenance crew to work with a gas installation crew three days prior.

49. Defendant did not terminate the employment of a younger colleague of Plaintiff's following a similar incident.

50. Defendant discriminated against Plaintiff on the basis of his age by treating a younger, similarly situated employee more favorably than Plaintiff.

51. Plaintiff suffered damages because of Defendant's discriminatory actions, including loss of his position as a supervisor, loss of past and future wages and benefits, and the attorneys' fees and costs associated with bringing this action.

## COUNT II

*Discrimination in Violation of Massachusetts General Laws for Discrimination Based on Age*
**(M.G.L. ch. 151B)**

52. Plaintiff repeats and realleges paragraphs 1 through 45 hereof, as if fully set forth herein.

53. Defendant discriminated against Plaintiff on the basis of age (over forty (40) years old) by terminating Plaintiff for allegedly failing to install a gas main extension on the Woburn Job.

54. Plaintiff completed the Woburn Job with his team to the best of his abilities and knowledge, despite having no experience with gas installation, receiving no training regarding gas installation, and having only been reassigned from a maintenance crew to work with a gas installation crew three days prior.

55. Defendant did not terminate the employment of a younger colleague of Plaintiff's following a similar incident.

56. Defendant discriminated against Plaintiff on the basis of his age by treating a younger, similarly situated employee more favorably than Plaintiff.

57. Defendant engaged in unlawful discrimination against Plaintiff in violation of M.G.L. ch. 151B § 9, causing Plaintiff to suffer damages as aforesaid, and thereby deprived Plaintiff of rights secured under M.G.L. ch. 151B.

58. Plaintiff requests damages and a trial by jury on any issue of fact regarding damages pursuant to M.G.L. ch. 151B § 9.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court enter judgment in his favor under all Counts for:

A. The value of lost wages and benefits caused by the Defendant's unlawful acts;

B. An equitable front pay award;

C. Treble damages in an amount equal to the value of lost wages and benefits awarded pursuant to M.G.L. ch. 151B;

D. Pre- and post-judgment interest;

E. Costs and reasonable attorney's fees; and

F. Such other relief as the Court deems fair and equitable.

## JURY TRIAL DEMAND

Plaintiff claims trial by jury on all issues triable by right to a jury. Andrew J. Adams, Esq. is hereby designated as trial counsel.

Dated: June 27, 2024

Respectfully submitted,

Plaintiff, Daniel Zimmerman

By his attorneys,

/s/ *Andrew J. Adams*
Andrew J. Adams (#705077)
Stacy W. Thomsen (#706746)
DARROWEVERETT LLP
50 Congress Street, Suite 1040
Boston, MA 02109
(617) 443-4500
aadams@darroweverett.com
sthomsen@darroweverett.com